UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL MANCINI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF CLOVERDALE POLICE DEPARTMENT, et al.,<br><br>　　　　Defendants. | Case No. 15-cv-02804-JSC<br><br>**ORDER DISMISSING FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 43 |

　　　　Plaintiff Daniel Mancini, proceeding *in forma pauperis*, filed the instant First Amended Complaint ("FAC") against the City of Cloverdale Police Department, retired Cloverdale Police Chief Mark Tuma and Retired Sergeant Keith King, and current Cloverdale Police Officers Michael Campbell, Kenneth Roux, Adam Elbeck,[1] and a number of Does. (Dkt. No. 10.) The FAC arises out of Roux and Elbeck's false accusations that Plaintiff burglarized Roux's Body Shop, and Plaintiff's request that the Cloverdale Police Department press charges against Roux and Elbeck after they violently attacked him. Plaintiff alleges that Roux and Elbeck are liable for negligence, false imprisonment, and assault and battery. Plaintiff also alleges that Chief Tuma, Sergeant King, and Officer Campbell violated his civil rights and conspired to violate his civil rights. Upon the review required by 28 U.S.C. § 1915(e)(2), the Court previously dismissed Plaintiff's complaint with leave to amend, finding that the federal counts failed to state a claim upon which relief could be granted, such that there was no basis for federal jurisdiction over the state law claims. *See Mancini v. City of Cloverdale Police Dep't*, No. 15-cv-02804-JSC, 2015 WL 3993216, at *4-5 (N.D. Cal. June 30, 2015). Because, upon review, Plaintiff's FAC still fails

---

[1] In the initial complaint, Plaintiff named Adam Alvareck as a defendant, but now corrects the defendant's surname to Elbeck. (Dkt. No. 10 ¶ 1.)

to state a claim for relief under any federal cause of action, the Court DISMISSES the FAC with leave to amend as set forth below.

## ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

The factual background of this case was already addressed in the Court's Order dismissing the initial complaint, *Mancini*, 2014 WL 3993216, at *1-2. The FAC has not added many new facts, but has clarified the claims. Thus, some background is provided here.

The case arises out of false accusations that on October 31, 2013, Plaintiff stole a safe from the Roux Body Shop (the "Body Shop"), owned by Defendant Kenneth Roux. (Dkt. No. 10 ¶¶ 17.) After the burglary, Roux's associate, friend, and "hitman" and motorcycle gang member Elbeck came by the home of Brenda Norberg, the mother of Plaintiff's daughter, and wrote down the license plate of Norberg's SUV. (*Id.* ¶ 20.) Elbeck told Norberg that Plaintiff had stolen the safe the night before, and during the next few days made it known that he was searching for Plaintiff. (*Id.*) On November 12, 2013, Elbeck came to the home of Plaintiff's friend, accused Plaintiff of stealing the goods and hiding them on Norberg's property, and ordered Plaintiff to take him there. (*Id.* ¶ 21.) Elbeck then ordered Plaintiff to accompany him to the Body Shop. (*Id.* ¶ 22.) Plaintiff, intimidated and feeling like he had no choice, went with Elbeck. (*Id.*) At the Body Shop, Roux and Elbeck placed Plaintiff in a "spray booth"; there, Roux pulled out a pistol and leather gloves, and both men hit, kicked, punched, and stomped on Plaintiff for two hours. (*Id.* ¶ 23.) Plaintiff, who floated in and out of consciousness, suffered a severely damaged face, left eye, neck and back, requiring surgery. (*Id.*) Roux then threatened Plaintiff that he "was going to be taken to a wood chipper and killed for committing the burglary." (*Id.* ¶ 24.) Roux and Elbeck told Plaintiff that he "was dead no matter what, but they would refrain from killing his children if he returned the stolen property" and that if Plaintiff "ran, they would kill his children, and then kill him when and if he ever returned." (*Id.*) The men gave Plaintiff two hours to return the stolen property. (*Id.*)

After leaving the Body Shop, Plaintiff went to speak with others to find out who committed the burglary. He learned from others that Roux and Elbeck claimed to have a video of the burglary that showed the SUV involved in the burglary belonged to Norberg. (*Id.* ¶¶ 27-28.)

On November 13, 2013, Plaintiff, Norberg, Roux, and Roux's wife viewed the video, and they all agreed the video on the SUV was not Norberg's. (*Id.* ¶¶ 29-30.) Roux admitted that he had made a mistake and would tell Elbeck to "back off." (*Id.* ¶ 30.) Later that day, Plaintiff went to Santa Rosa Memorial Hospital to treat his injuries from the beating, which included head and face injuries and swelling, damage to his eye, a left frontal scalp contusion, severe damage to his back and neck, and an internal injury that caused him to suffer a near-constant need to urinate. (*Id.* ¶ 33.) Plaintiff went for follow-up medical treatment in January and got an MRI, and his doctor informed him that his previously-moderate back problems would now require surgery due to the attack. (*Id.* ¶ 40.)

On November 19, 2013, Plaintiff went to the Cloverdale Police Department and reported the beating to Officer Rudy Sebraszia. (*Id.* ¶ 34.)[2] Plaintiff asked to press charges. (*Id.*) Officer Sebraszia photographed Plaintiff's injuries, but told Plaintiff that the case belonged to Officer Campbell, who was out and unavailable at the time. (*Id.*) Officer Sebraszia also represented to Plaintiff that the Cloverdale Police Department had a suspect in mind for who had committed the burglary, and knew it was not Plaintiff. (*Id.* ¶ 35.) The next day, Plaintiff went to his mother's house in Oregon for one month to heal his injuries. (*Id.* ¶ 37.) While Plaintiff was away, Norberg went to the Cloverdale Police Department and identified Roux and Elbeck in police photos, even though she felt threatened by Roux and fearful of testifying against him. (*Id.* ¶ 36.) Plaintiff's uncle also discussed the investigation with Chief Tuma and/or Sergeant King, who informed him that "everything was being taken care of and arrests [would] be made." (*Id.* ¶ 38.) Plaintiff returned to Cloverdale on December 20, 2013, and went immediately to the police department to make a second report of the attack. (*Id.* ¶ 39.) Officer Campbell interviewed Plaintiff on videotape for one hour, and Plaintiff gave a detailed statement of the attack. (*Id.*) Plaintiff later learned that most of the information he had given the officer was not included in the police report. (*Id.* ¶ 47.)

On January 9, 2014, Elbeck called Norberg, told her that Plaintiff was "going to die for

---

[2] The FAC here alleges that Plaintiff reported the attack to "defendant Officer Rudy Sebraszia" (Dkt. No. 10 ¶ 34), but Sebraszia is not named as a defendant in this action.

1    being a rat." (*Id.* ¶ 41.) Norberg reported the call to an Officer Rose at the Cloverdale Police
2    Department, but Chief Tuma, Sergeant King, and Officer Campbell did not take any action in
3    response to the threat. (*Id.*)

4    On January 20, 2014, when it appeared to Plaintiff that no investigation or prosecution of
5    Roux or Elbeck had begun, Plaintiff returned to the Cloverdale Police Department to speak with
6    Officer Campbell. (*Id.* ¶ 42.) At Plaintiff's request, Officer Campbell placed a wire on Plaintiff to
7    record conversations with Roux. (*Id.*) Roux first failed to appear at the designated meeting place,
8    then, when the two went to the Body Shop to talk, Roux denied having any knowledge of
9    assaulting Plaintiff. (*Id.*) Roux's wife then called the police, and denied knowing Plaintiff. (*Id.*)
10   To the contrary, all of the "people and witnesses involved in this case were acquainted with each
11   other[.]" (*Id.* ¶ 43.) As it turned out, Officer Campbell is a long-time friend of Roux. (*Id.* ¶ 44.)
12   Roux was restoring Officer Campbell's personal car during the time of the incident with Plaintiff
13   and throughout the course of the investigation. (*Id.*) In fact, for at least 10 years Roux had been
14   doing the body work for the Cloverdale Police Department. (*Id.* ¶ 45.)

15   As of the filing of the FAC, Plaintiff has repeatedly requested that the Cloverdale Police
16   Department and Sonoma County District Attorney prosecute Roux and Elbeck for the assault, but
17   no action has been taken. (*Id.* ¶ 49.) In March of 2015, Plaintiff asked Officer Campbell to speak
18   with Plaintiff's private investigator about the case, and Officer Campbell responded that Plaintiff's
19   investigator "had better not show up 'in his town.'" (*Id.* ¶ 96.) In addition, the Cloverdale Police
20   Department has refused to give Plaintiff a copy of the police report of the incident. (*Id.* ¶ 46.)

21   In the seven-count FAC, Plaintiff brings three counts against Roux and Elbeck for
22   negligence, false imprisonment, and assault and battery. In addition, Plaintiff brings four counts
23   against Chief Tuma, Sergeant King, Officer Campbell. Plaintiff brings one claim against these
24   defendants under 42 U.S.C. § 1983, contending that they violated Plaintiff's First and Fourteenth
25   Amendment "rights to due process and equal protection under the law, and misused the power
26   entrusted to them under the law, when they selectively enforced the law, acted with deliberate
27   indifference, failed to perform a proper investigation, and suppressed criminal charges that should
28   have been filed against defendants Roux and Elbeck[.]" (*Id.* ¶¶ 98, 101.) In the fifth through

4

1  seventh counts, Plaintiff alleges that Chief Tuma, Sergeant King, and Officer Campbell conspired
2  to violate his civil rights in violation of all three sub-sections of 42 U.S.C. § 1985.

**LEGAL STANDARD**

The Court must dismiss an *in forma pauperis* ("IFP") complaint before service of process if it is frivolous, fails to state a claim, or contains a complete defense to the action on its face. 28 U.S.C. § 1915(e)(2). The Court retains discretion over the terms of dismissal, including whether to grant leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

Regarding dismissals for failure to state a claim, Section 1915(e)(2) parallels the language of Federal Rules of Civil Procedure 12(b)(6). *Lopez*, 203 F.3d at 1127. In considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must accept as true the allegations of the complaint in question, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and construe the pleading in the light most favorable to the plaintiff, *see Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). To avoid dismissal, a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* Furthermore, a claim upon which a court can grant relief must have facial plausibility. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. A complaint must also comply with Rule 8(a)(2), which requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *See, e.g.*, *Cromer v. Unknown*, No. CV 13-4963-CJC(OP), 2014 WL 3101410, at *3-4 (C.D. Cal. July 2, 2014).

In addition, on Section 1915 review the Court also has an independent obligation to determine that it has subject matter jurisdiction over an action. *United States v. Moreno-Morillo*, 334 F.3d 819, 830 (9th Cir. 2003).

5

**DISCUSSION**

**B.     State Law Claims**

As before, the Court concludes that Plaintiff has stated a claim for at least some of his common law counts again Roux and Elbeck, and therefore the claims against these individual defendants pass muster under Section 1915 and could proceed to service. However, just as with the initial complaint, the Court finds it necessary to review the federal claims because without them there would be only state law claims before the Court, and therefore supplemental jurisdiction in federal court would not be appropriate. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."); *Wren v. Sletten Co.*, 654 F.2d 529, 536 (9th Cir. 1981) ("When the state issues apparently predominate and all federal claims are dismissed . . . the proper exercise of discretion requires dismissal of the state claims.").

**A.     Federal Law Claims**

The FAC includes four separate civil rights claims: one arising under Section 1983, and three under the three separate provisions of Section 1985.

   1.     <u>Count Four: Deprivation of Civil Rights Under Section 1983</u>

The third count in the FAC alleges violations of Plaintiff's civil rights under Section 1983. To state a claim under Section 1983, a complaint "must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). To adequately plead these elements, the complaint must identify what constitutional or other federal right each defendant violated, providing sufficient facts to plausibly support each purported violation. *See, e.g.*, *Drawsand v. F.F. Props., L.L.P.*, 866 F. Supp. 2d 1110, 1121 (N.D. Cal. 2011) ("Aside from passing references to due process and equal protection, the Complaint fails to allege how [the plaintiff's] constitutional rights were violated and fails to identify each [d]efendant's role therein.").

Here, the FAC alleges that Chief Tuma, Sergeant King, and Officer Campbell violated

6

Plaintiff's "right to petition for redress of grievances, guaranteed by the First and Fourteenth Amendments to the United States Constitution, and deprived [Plaintiff] of his constitutional rights to due process and equal protection under the law" by "selectively enforc[ing] the law . . . fail[ing] to perform a proper investigation, and suppress[ing] criminal charges that should have been filed against defendants Roux and Elbeck after their vicious and felonious false imprisonments, assault, battery, and threats." (Dkt. No. 10 ¶ 98.)

With respect to the Fourteenth Amendment due process claim, ordinarily "an inadequate investigation by police officers is not sufficient to state a § 1983 claim unless another recognized constitutional right is involved, such as failure to protect against discrimination." *Sexual Sin De Un Abdul Blue v. City of Los Angeles*, No. CV 09-7573-PA (JEM), 2010 WL 890172, at *6 (C.D. Cal. Mar. 8, 2010). This is because absent a special relationship or special statutory duty, police officers have no affirmative duty to investigate crimes in a particular manner or to protect one citizen from another. *See Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994); *Doe v. Cnty. of San Mateo*, No. C 07-05596 SI, C 08-2541 SI, 2009 WL 735149, at *8 (N.D. Cal. Mar. 19, 2009). Thus, a plaintiff does not have a constitutional right to have the police investigate his complaints against other parties. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 768 (2005) ("[T]he benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations."); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *Smith v. Ark. State Highway Emps., Local 1315*, 441 U.S. 463, 464-65 (1979) (per curiam) (noting that the Constitution "does not impose any affirmative obligation on the government to listen [or] to respond" to grievances"). Thus, a plaintiff cannot state a Section 1983 claim merely by alleging that the police failed to investigate their complaint absent evidence of some other violation. *See, e.g.*, *Boldt v. Myers*, 376 F. App'x 800, 801 (9th Cir. 2010); *Hason v. Beck*, No. CV 13-3274-SVW (JPR), 2013 WL 6732672, at *5 (C.D. Cal. Dec. 19, 2013); *Sexual Sin De Un Abdul Blue*, 2010 WL 890172, at *6. Accordingly, the FAC has not stated a claim for violation of Plaintiff's right to due process of law.

1     The Fourteenth Amendment equal protection analysis is slightly different.  The Ninth
2 Circuit recognizes a "constitutional right . . . to have police services administered in a
3 nondiscriminatory manner—a right that is violated when a state actor denies such protection to
4 disfavored persons." *Sexual Sin De Un Abdul Blue*, 2010 WL 890172, at *6 (citing *Gomez v.*
5 *Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) (per curiam)); *Estate of Macias v. Ihde*, 219 F.3d
6 1018, 1028 (9th Cir. 2000); *see also Elliot-Park v. Manglona*, 592 F.3d 1003, 1007 (9th Cir. 2010)
7 (holding that discriminatory denial of investigative services may violate equal protection);
8 *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 198 n.3 (1989) ("The State may
9 not, of course, selectively deny its protective services to certain disfavored minorities without
10 violating the Equal Protection Clause.").  To state a claim under Section 1983 for violation of the
11 Equal Protection Clause, a plaintiff must allege that defendants acted with an intent or purpose to
12 discriminate against him based on his membership in a protected class.  *Lee v. City of Los Angeles*,
13 250 F.3d 668, 686 (9th Cir. 2001).   In the alternative, a Fourteenth Amendment claim may
14 proceed on a "class-of-one" theory, which does not depend on a suspect classification like race or
15 gender, but rather requires the plaintiff to allege that (1) he has been treated intentionally
16 differently from others similarly situated; and (2) there is no rational basis for the difference in
17 treatment.  *Village of Willbowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Gerhart v. Lake*
18 *Cnty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011).
19     But "[c]lass-of-one equal protection claims are not cognizable with respect to all state
20 decisions."  *Williams v. Cnty. of Alameda*, 26 F. Supp. 3d 925, 941 (N.D. Cal. 2014).  In *Engquist*
21 *v. Oregon Department of Agriculture*, 553 U.S. 591 (2008), the Supreme Court held that the Equal
22 Protection Clause does not support a class-of-one claim arising in the employment context because
23 "[t]here are some forms of state action . . . which by their nature involve discretionary
24 decisionmaking based on a vast array of individualized assessments."  *Id.* at 603.  In *Engquist*'s
25 wake, some Courts of Appeal have held that class-of-one claims cannot be brought in the law
26 enforcement failure-to-investigate context, but others allow such a claim where there are
27 allegations that state a plausible claim of personal animus.  *Compare, e.g.*, *Flowers v.*
28 *Minneapolis*, 558 F.3d 794, 799-800 (8th Cir. 2009) ("[W]hile a police officer's investigative

8

decisions remain subject to traditional class-based equal protection analysis, they may not be attacked in a class-of-one equal protection claim."); *United States v. Moore*, 543 F.3d 891, 901 (7th Cir. 2008) (holding that class-of-one claims cannot challenge the exercise of prosecutorial discretion), *with Hanes v. Zurick*, 578 F.3d 491, 492 (7th Cir. 2009) (holding that a plaintiff stated a class-of-one equal protection claim against police officers that repeatedly arrested him solely for reasons of personal animus). The Ninth Circuit has not yet weighed in on this issue. *See Le Fay v. Le Fay*, No. 1:13-cv-1362 AWI MJS, 2015 WL 106262, at *6 (E.D. Cal. Jan. 7, 2015); *Williams*, 26 F. Supp. 3d at 942. "[A]t least one district court has reasoned that equal protection claims targeting officer decision-making should be limited to those alleging membership in a suspect class." *Vinatieri v. Mosley*, 787 F. Supp. 2d 1022, 1030 (N.D. Cal. 2011) (citation omitted), *aff'd*, 2013 WL 3389360 (9th Cir. Jul. 9, 2013).

But even if the Ninth Circuit were to allow such a claim, Plaintiff has not alleged facts sufficient to state a plausible claim here, because the FAC contains only the conclusory allegation that Plaintiff was "intentionally treated differently from others similarly situated" without any factual support. (Dkt. No. 10 ¶ 129.)[3] Although the FAC includes allegations of the officers' irrational motives—*i.e.*, a desire to protect Roux and Elbeck—it does not include any allegations explaining to whom Plaintiff was similarly situated. The FAC therefore fails to state a claim under Section 1983 predicated on a violation of Plaintiff's Fourteenth Amendment right to equal protection under the laws. *See, e.g.*, *Vinatieri*, 787 F. Supp. 2d at 1031; *see also, e.g.*, *Le Fay*, 2015 WL 106262, at *7 (noting that the plaintiff's class-of-one equal protection claim for failure to investigate failed for, among other reasons, the absence of allegations that "there exists a group of similarly situated persons to whom Plaintiffs compare themselves"); *Solis v. City of Fresno*, No. No. 1:11-CV-00053 AWI GSA, 2011 WL 5825661, at *7 (E.D. Cal. Nov. 17, 2011) (dismissing plaintiff's class-of-one equal protection claim for failure to investigate where the plaintiff did not plead a high level of similarity between herself and the group to which she seeks to compare

---

[3] Notably, this allegation appears nowhere in the Section 1983 claim, but only in the context of the Section 1985 counts. Still, construing the FAC in the light most favorable to Plaintiff, the Court construes the class-of-one theory to apply to the Section 1983 claim as well.

herself).

Nor has Plaintiff stated a claim for Section 1983 against Tuma, King, or Campbell predicated on a violation of the First Amendment. Section 1983 claims involving a First Amendment violation are generally framed as retaliation claims, requiring a plaintiff to "establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Doe*, 2009 WL 735149, at *5 (quoting *Bennett v. Hendrix*, 423 F.3d 1247, 1251 (11th Cir. 2005)). Filing a police report is the type of speech that is protected under the Petition Clause of the First Amendment, which provides that "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. Amend. I, cl. 6; *see also Doe*, 2009 WL 735149, at *5 (citations omitted). But in the First Amendment context, there is no right to a response or any particular action when a citizen petitions the government for redress of a grievance. *See, e.g.*, *Doe*, 2009 WL 735149, at *5 (citation omitted). Thus, the proper inquiry for determining whether a First Amendment violation has occurred "asks whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999); *see also Pinard v. Clatskanie Sch. Dist.*, 467 F.3d 755, 770 (9th Cir. 2006) (same). Here, Plaintiff has no cognizable First Amendment claim based on his allegations that Chief Tuma, Sergeant King, and Officer Campbell took no action to investigate his claims "because the First Amendment right to petition does not grant citizens the right to any particular action in response to a grievance." *Doe*, 2009 WL 735149, at *6 (citing *Flick v. DD*, 932 F.2d 728, 729 (8th Cir. 1991)). Plaintiff therefore fails to state a claim for a violation of the First or Fourteenth Amendments, and has not alleged violation of any other constitutional right or federal law. The FAC thus fails to state a claim under Section 1983 against Defendants Chief Tuma, Sergeant King, or Officer Campbell.

Lastly, while the FAC does not specifically allege this Section 1983 claim against the City of Cloverdale, and thus Plaintiff has not brought a claim of municipal liability under *Monell v. N.Y. Dep't of Social Servs.*, 436 U.S. 658 (1978), Plaintiff does allege that the Section 1983

violation occurred "as a result of policies and customs of the City of Cloverdale Police Department." (Dkt. No. 10 ¶ 100.) Elsewhere in the FAC, Plaintiff alleges that Defendants Tuma and King had a duty to investigate the background of their employees but failed to exercise due care in hiring them, that they ratified other employees' conduct and that they were deliberately indifferent to such conduct. (*Id.* ¶¶ 10-15, 98.) To the extent that Plaintiff included these allegations in an effort to bring a *Monell* municipal liability claim, it is insufficient because Plaintiff does not identify what the policies, customs, or practices are that led to the alleged violation or facts that support a plausible deliberate indifference claim. *See Linder v. City of Emeryville*, No. C-13-01934 EDL, 2013 WL 5609319, at *2 (N.D. Cal. Oct. 11, 2013) (in case challenging police department's failure to investigate, noting that alleging only a single incident of failure to investigate is not enough to allege inadequate training, deliberate indifference, or a custom and practice). Accordingly, Plaintiff has not stated a claim for municipal liability either.

For all of the above reasons, the FAC does not allege a cognizable Section 1983 claim.

2.  Counts Five through Seven: Conspiracy to Violate Civil Rights in Violation of Section 1985(1), (2), and (3)

The fifth through seventh causes of action allege that Chief Tuma, Sergeant King, and Officer Campbell conspired to violate Plaintiff's civil rights in violation of the three sub-sections of Section 1985. But Section 1985 is not a stand-alone substantive right. It "creates no independent cause of action and provides remedial relief only after a violation of a specifically defined and designated federal right is first established." *Harmon v. City of Fresno*, No. CV F 08-1311 LJO GSA, 2008 WL 4690897, at *9 (E.D. Cal. Oct. 21, 2008). Because, as discussed above, the FAC does not allege facts sufficient to state a plausible claim that Defendants violated any constitutional right of Plaintiff, the Section 1985 counts likewise fail to state a claim. *See Vinatieri*, 787 F. Supp. 2d at 1031.

**CONCLUSION**

As with the initial complaint, while Plaintiff's common law counts against Roux and Elbeck state a claim, his federal claims do not. Plaintiff is again granted leave to amend his

federal claims to the extent he can, consistent with the discussion set forth above.  Plaintiff's Second Amended Complaint ("SAC") is due by **August 14, 2015**.  Failure to amend will result in dismissal of Counts Four through Seven with prejudice, and dismissal of the state law claims without prejudice.

**IT IS SO ORDERED.**

Dated:  July 24, 2015

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

12